# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAAC'S DELI, INC., <br> Plaintiff, <br><br> v. <br><br> STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, <br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil No. 5:20-cv-06165-JMG |

## MEMORANDUM OPINION

**GALLAGHER, J.**                                                                                                            May 14, 2021

### I.    OVERVIEW

      COVID-19 has certainly authored a dark and unprecedented chapter in our history. Nevertheless, it cannot rewrite the plain terms of a valid contract to impose liability in circumstances not previously contemplated by the parties. Plaintiff Isaac's Deli, Inc. ("Isaac's") brought suit in the underlying matter against their insurer, Defendant State Auto Property and Casualty Insurance Company ("State Auto"), seeking to recover business losses resulting from Governor Tom Wolf's emergency shut down orders issued in response to the outbreak of the COVID-19 pandemic. Isaac's claims that they are entitled to reimbursement for lost revenue under the Business Income, Extended Business Income, Extra Expense, and Civil Authority provisions of their Businessowners Policy (the "Policy") with State Auto. Presently before the Court is State Auto's Motion for Judgment on the Pleadings, alleging that Isaac's has failed to state a claim for damaged or lost property under the applicable terms of the Policy. For the reasons set forth in more detail below, Defendant's Motion is granted.

## II. FACTUAL BACKGROUND

### a. Allegations

Since 1983, Isaac's Deli has owned and operated a chain of popular sandwich restaurants throughout central Pennsylvania. Pl. Resp. 1. Isaac's currently boasts fourteen locations in Cumberland, Dauphin, Lancaster, and York counties. Compl. ¶ 2. State Auto is a property and casualty insurance company based in Columbus, Ohio and authorized to conduct insurance business within the Commonwealth. *Id.* ¶¶ 3-4. Isaac's maintained a Policy with State Auto covering certain business loses and damages during the period of July 1, 2019 through July 1, 2020.[1] *Id.*, Ex. A at 17. The applicable terms of the Policy provide that State Auto "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.*, Ex. A at 204.

On March 6, 2020, Governor Tom Wolf issued a Proclamation of Disaster Emergency following the outbreak of the COVID-19 pandemic. *Id.* ¶ 19. Governor Wolf subsequently ordered all "non-life sustaining" businesses in the Commonwealth to cease operations and close all physical locations on March 19, 2020. *Id.* ¶ 20. On March 23, 2020, Governor Wolf issued Stay at Home Order for citizens in certain counties throughout central Pennsylvania, including Cumberland, Dauphin, Lancaster, and York. *Id.* ¶ 21. The Governor later extended his Stay at Home Order to all counties in Pennsylvania on April 1, 2020. *Id.* ¶ 23. Isaac's thereafter closed its restaurants and ceased its operations. *Id.* ¶ 26.

On May 4, 2020, Isaac's noticed a claim upon State Auto for damages purportedly incurred from their "loss of use" of the restaurant premises following the Governor's shut down orders. *Id.* ¶¶ 26, 29, 31. Isaac's claim sought recovery under the Business Income, Extended Business

---

[1] Defendant notes that the location at 597 E. Main Street in Hummelstown, PA was deleted from the Policy effective October 31, 2019. Def. Mot. 4 n.3.

Income, Extra Expense, and Civil Authority provisions of the Policy. *Id.* ¶ 30. In response, State Auto issued a Notice of Declination on September 11, 2020. *Id.* ¶ 32. On November 10, 2020, Isaac's filed a Complaint against State Auto alleging breach of contract and requesting a declaration by the Court that Isaac's is entitled to recover its business losses under the applicable provisions of the Policy. *Id.* ¶ 36.

### b. Procedural History

Plaintiff filed a Complaint against Defendant alleging breach of contract and requesting declaratory relief on November 10, 2020. (ECF No. 1). On December 7, 2020, Defendant removed this case to the United States District Court for the Eastern District of Pennsylvania. *Id.* Defendant then filed an Answer on December 14, 2020. (ECF No. 3). On February 3, 2021, Defendant filed the instant Motion for Judgment on the Pleadings. (ECF No. 19). Plaintiff filed a Response in Opposition to Defendant's Motion on February 24, 2021. (ECF No. 22). On March 3, 2021, Defendant filed its Reply to Plaintiff's Response. (ECF No. 24).

## III. LEGAL STANDARD

### a. Rule 12(c) Motion for Judgment on the Pleadings

At the conclusion of the pleadings stage, "but early enough not to delay trial, a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The pleadings are closed after an answer is filed, along with a reply to any additional claims asserted in the answer." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). A motion for judgment on the pleadings should only be granted "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 470 n.7 (3d Cir. 2019). In reviewing a 12(c) motion, the court applies the same standard as that applied under Rule 12(b)(6). *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017).

Under the 12(b)(6) standard, "the court must determine whether the complaint is supported by well-pleaded factual allegations." *Wolfington v. Reconstructive Orthopaedic Associates II, P.C.*, 268 F. Supp. 3d 756, 760 (E.D. Pa. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In other words, the court must find that the moving party is "plausibly" entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The court may consider "the pleadings and attached exhibits, [and] undisputedly authentic documents attached to the motion…if plaintiff's claims are based on the documents." *Atiyeh*, 742 F. Supp. 2d at 595. During this analysis, the court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). Whether an insured has stated a plausible claim for relief, or whether their claim is barred by an exclusion under an insurance policy, is a question that may be resolved on a Rule 12(c) motion. *Vito v. RSUI Indem. Co.*, 435 F. Supp. 3d 660, 665 (E.D. Pa. 2020).

b. **Insurance Policy Interpretation**

Interpretation of an insurance contract is a matter of law. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 676 (3d Cir. 2016). The primary objective is to discern the intent of the parties as manifested by the language of the agreement. *Am. Auto Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). This requires the court to give effect to each of its provisions, read these provisions within the context of the policy as a whole, and construe the policy in accordance with the plain meaning of its terms. *See Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 358 (3d Cir. 2019). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575. 582-84 (3d Cir. 2009) (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. 1993)). Provisions that are susceptible to more than one reasonable interpretation must be construed against the insurer. *Murray*, 658 F.3d at 321. In Pennsylvania, the policyholder bears

4

the initial burden of demonstrating the existence of a covered loss. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). Once this burden is met, the insurer must demonstrate that an exclusion precludes recovery under the policy. *Id.*

IV. **ANALYSIS**

  a. **Coverage Under the Business Income and Civil Authority Provisions**

The applicable terms of the Policy provide that State Auto "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Compl., Ex. A at 204. Covered Causes of Loss are "[r]isks of direct physical loss unless otherwise limited or excluded in the Policy." *See id.*, Ex. A at 205. The Business Income[2] and Civil Authority provisions state in relevant part:

**Business Income – (A)(5)(f)(1)**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.
…

**Extended Business Income – (A)(5)(f)(2)**

If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that…[b]egins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed.
…

Loss of Business Income must be caused by a direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.
…

**Extra Expense – (A)(5)(g)(1)**

We will pay necessary Extra Expense you incur during the "period of restoration" that would have not incurred if there had been no direct physical loss or damage to property at

---
[2] Defendant refers to the Policy's Business Income provision (Section (A)(5)(f)(1)), Extended Business Income provision (Section (A)(5)(f)(2)), and Extra Expense provision (Section (A)(5)(g)(1)) collectively as "Business Income Coverage" for the purposes of this Motion because each provision purportedly requires direct physical loss of, or damage to, property resulting from a Covered Cause of Loss. Def. Mot. 2 n.2.

5

the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

…

**Civil Authority – (A)(5)(i)**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

*Id.*, Ex. A at 207-209.

Plaintiff asserts that these provisions are ambiguous, and thus should be construed against the drafter. Def. Resp. 5. In requiring "direct physical loss of or damage to property at the described premises," Plaintiff argues that Defendant's use of the disjunctive "or" evidences an intent to differentiate between "loss of" and "damage to" the covered property. *Id.* at 8 (citing *Henderson Rd. Restaurant Sys., Inc. v. Zurich Am. Ins. Co.*, No. 20-1239, 2021WL 168422, at *12 (N.D. Ohio Jan. 19, 2021)). Plaintiff concededly asserts no claims for physical damages. *Id.* However, Plaintiff suggests that the Governor's orders precluding the operation of dine-in restaurants essentially deprived their properties of all functionality and utility. *Id.* at 10. Plaintiff contends that such "loss of use" should be construed as a "loss of property" covered under the Business Income and Civil Authority provisions. *Id.* at 8-15. Plaintiff further alleges that even if they have not stated the requisite theory of recovery under the terms of the Policy, the absence of a virus or bacteria exclusion, coupled with the Policy's Food-Borne Illness provision,[3] gave rise to a reasonable expectation of coverage for business losses resulting from the Governor's shut down orders. *Id.* at 15-17.

---

[3] Plaintiff does not specifically alleged a right to recovery under the Food-Borne Illness provision. *See* Compl. ¶ 36. Instead, Plaintiff suggests that the provision's inclusion in the Policy justified their reasonable expectation that business losses resulting from the COVID-19 pandemic would be covered. Pl. Resp. 15-16.

6

Defendant counters that Plaintiff's allegations are facially deficient because they fail to state a claim for damaged or lost property as contemplated under the terms of the Policy. Def. Mot. 1. According to Defendant, a "direct physical loss of property" requires tangible, physical alterations to the structure itself. *Id.* at 11. Defendant asserts that Plaintiff's "loss of use" argument does not satisfy this prerequisite to coverage. *Id.* at 11-13. Additionally, Defendant emphasizes that Plaintiff neither alleges that the COVID-19 virus actually contaminated their properties, or any surrounding properties, nor that any such contamination caused the suspension of operations. *Id.* at 13. As a result, Defendant argues that Plaintiff's claims under the Business Income and Civil Authority provisions must fail. *Id.* at 9-14. Defendant further argues that the Policy's "Ordinance or Law" exclusion also precludes recovery because Plaintiff's purported "loss of use" resulted from a government order regulating the use of their property. *Id.* at 15-16.

Disagreement between the parties as to the proper construction of a policy's terms do not render them ambiguous. *Pacific Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 436 (3d Cir 2012). Neither does the absence of a definition for the phrases "direct physical loss" or "direct physical damage." *See Telecomm. Network Design v. Brethren Mut. Ins. Co.*, 5 A.3d 336-37 (Pa. Super. 2010). The strongest evidence of the parties' intent is the language of the policy itself. *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75-76 (3d Cir. 2011). Therefore, the court must interpret the plain text of the policy and, upon finding that it is clear and unambiguous, enforce that language according to its generally accepted meaning. *Murray*, 658 F.3d at 321.

Given the context in which they are used and the sequence in which they appear, the adjectives "direct" and "physical" modify the phrases "loss of property" and "damage to property." *See Frank's Auto Tag, LLC v. Selective Ins. Co. of the Southeast*, No. 20-2740, 2021 WL 289547, at *4 (E.D. Pa. Jan. 28, 2021). The word "direct" is defined as "stemming immediately from a source;

7

characterized by a close logical, causal, or consequential relationship." *Direct*, Merriam-Webster Dictionary (last visited May 10, 2021). "Physical" means "[o]f, relating to, or involving material things; pertaining to real, tangible objects." *Physical*, Black's Law Dictionary (11th ed. 2019). Construing these terms together as they apply to the phrase "loss of property," a natural reading suggests that the Policy contemplates an explicit nexus between the purported loss and the physical conditions of the covered premises.

This reading is consistent with previous Third Circuit interpretations of the phrase as applied in analogous contexts. In determining whether insurance coverage extended to the presence of asbestos within a covered property, the court in *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.* held that "physical loss" of a structure occurs when it has been rendered "uninhabitable and unusable." 311 F.3d 226, 235 (3d Cir. 2002). Conversely, "when the structure continues to function…it has not lost its utility" and the owner has not suffered a physical loss. *Id.* at 236. The court in *Motorists Mutual Ins. Co. v. Hardinger* found this definition "instructive in [] case[s] where sources unnoticeable to the naked eye have allegedly reduced the use of the property to a substantial degree." 131 Fed. App'x 823, 826 (3d Cir. 2005). The court likewise reiterated that "physical loss" means that the property's "function is nearly eliminated or destroyed, or made…useless." *Id.* (quoting *Port Authority*, 311 F.3d at 236).

The growing body of case law within the Eastern District of Pennsylvania has adopted this definition within the context of the COVID-19 pandemic.[4] Upon consideration of analogous claims by plaintiffs seeking recovery of business losses purportedly resulting from Governor Wolf's shutdown orders, courts in this District have consistently found that a "direct physical loss" requires

---

[4] This is one of several factors informing the Court's determination of what constitutes a "direct physical loss" under the Policy. While persuasive authority may guide and ultimately reinforce the Court's conclusions, the Court must engage in an individualized review of the facts at bar and the applicable binding authority to render an independent judgment regarding the particular controversy before it. *See United States v. Nasir*, 982 F.3d 144, 170 n.28 (3d Cir. 2020).

harm to the actual physical structure of property which impedes business operations. *See J.B.'s Variety Inc. v. Axis Ins. Co.*, No. 20-4571, 2021 WL 1174917, at *4 (E.D. Pa. Mar. 29, 2021); *Frank Van's*, 2021 WL 289547, at *5-6; *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, No. 20-3863, 2021 WL 131555, at *5 (E.D. Pa. Jan. 14, 2021); *Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co.*, No. 20-2401, 2021 WL 131556, at *6 (E.D. Pa. Jan. 14, 2021); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. 20-1869, 2020 WL 7395153, at *5 (E.D. Pa. Dec. 17, 2020); *Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, No. 20-03376, 2020 WL 7181057, at *4 (E.D. Pa. Dec. 7, 2020); *Toppers Salon & Health Spa, Inc. v. Travelers Property Cas. Co. of America*, No. 20-03342, 2020 WL 7024287, at *4 (E.D. Pa. Nov. 30, 2020); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. 20-3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020). In these cases, the court's analysis has centered on whether the premises retained its operational utility. *See, e.g.*, *TAQ*, 2021 WL 131555, at *5; *Brian Handel*, 2020 WL 6545893, at *3. Where the alleged losses "bear[] no causal connection to the physical condition of its premises," no reasonable interpretation of the insurance policy would permit recovery. *See TAQ*, 2021 WL 131555, at *5.

Further consideration of the Policy as a whole demonstrates that Plaintiff's position is inconsistent with a permissible reading of its terms. The Business Income provisions limit recovery to the "period of restoration" which ends when the covered premises is "repaired, rebuilt, or replaced." Compl., Ex. A at 207-208. Each of these outcomes anticipate a physical rehabilitation of the premises itself. *See TAQ*, 2021 WL 131555, at *6 ("Built into coverage for business income and extra expense coverage…is the idea that there must be something to repair, rebuild, or replace."); *Newchops*, 2020 WL 7395153, at *5 (holding that "period of restoration" provision evidences intent that loss of property must affect physical structure); *Toppers Salon*, 2020 WL 7024287, at *4 (finding that parties' agreement to measure period of restoration against time it takes to repair premises indicates intent to cover physical damages). Interpreting "direct physical loss" to

9

include an ephemeral "loss of use" theory of recovery would impermissibly relegate the "period of restoration" language to mere surplusage. *See Clarke v. MMG Ins. Co.*, 100 A.3d 271, 276 (Pa. Super. 2014). The Court must decline to manufacture such uncertainty by stretching the language of the Policy beyond its plain meaning. *See Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011).

Plaintiff's business has certainly not been immune to the devastation wrought by the pandemic, and their inability to use their properties as dine-in restaurants undoubtedly has resulted in economic loss. However, such losses are intangible, not physical. *Newchops*, 2020 WL 7395153, at *5 (citing 9A Couch on Ins. § 129.7 (3d ed. 1995)). The generalized threat of harm stemming from the COVID-19 pandemic "lacks the distinct and demonstrable character necessary for…coverage." *Hardinger*, 131 Fed. App'x at 236. Plaintiff's properties "remained inhabitable and usable, albeit in limited ways."[5] *Brian Handel*, 2020 WL 654893, at *3. Therefore, Plaintiff's "loss of use" does not constitute a "direct physical loss" as required under the Policy's "Covered Cause of Loss." As such, Plaintiff has not stated a claim for recovery under the Business Income provisions.

Plaintiff's failure to allege a "Covered Cause of Loss" also precludes them from invoking the Civil Authority provision. Aside from sustaining no damage to the physical structure of their own properties, Plaintiff's claims do not suggest that the Governor's shut down orders "prohibit[ed] access to the described premises due to direct physical loss of or damage to property, other than at the described premises." Said differently, Plaintiff does not allege that a civil authority ordered the closure of their business due to physical damages or losses at a nearby property. *See Toppers Salon*, 2020 WL 7024287, at *4. Instead, the Governor ordered the closure of non-essential businesses in

---

[5] While Plaintiff was ordered to suspend dine-in service, they were permitted to continue physical operations on their property to maintain take-out and delivery operations. *See* Answer, Ex. 3 (ECF No. 3).

10

response to the public health threat posed by the outbreak of a global pandemic. *See* Pl. Resp. 13-14. Preemptive safety measures intended to curb the spread of the COVID-19 virus, however, do not establish the existence of structural damage or loss to nearby properties. *Frank Van's*, 2021 WL 289547, at *7; *Kessler Dental Assocs.*, 2020 WL 7181057, at *4; *4431, Inc. v. Cincinnati Ins. Cos.*, No. 20-04396, 2020 WL 7075318, at *12 (E.D. Pa. Dec. 3, 2020). Accordingly, Plaintiff does not state a claim under the Civil Authority provision of the Policy.

### b. Ordinance or Law Exclusion

Assuming, *arguendo*, that Plaintiff had alleged a "Covered Cause of Loss' under the Policy, their claim would still be barred under the Policy's "Ordinance or Law" exclusion. This provision states in relevant part that Defendant "will not pay for loss or damage caused directly or indirectly by…[t]he enforcement of any ordinance or law…[r]egulating the construction, *use*, or repair of any property." Compl., Ex. A at 212 (emphasis added). Pennsylvania law authorizes the Governor to issue "[e]xecutive orders [which] have the force and effect of law." 35 Pa. C.S. § 7301(b). Governor Wolf's shutdown order thus undoubtedly constitutes the "enforcement of any ordinance or law." The Court also finds that the Governor's order regulated the use of Plaintiff's property. Indeed, Plaintiff has conceded this point, stating unequivocally that "Isaac's was expressly forbidden to *use*, possess, and enjoy its properties for their traditional and intended purpose." Pl. Resp. 13 (emphasis added). This is consistent with subsequent guidance advising businesses on how they may operate within the mandates of the Governor's order.[6] The "Ordinance or Law"

---

[6] *See* "Guidance for Businesses in the Restaurant Industry Permitted to Operate During the COVID-19 Disaster Emergency to Ensure the Safety and Health of Employees and the Public," Governor Tom Wolf (May 27, 2020), https://www.governor.pa.gov/covid-19/restaurant-industry-guidance/. Other courts in this District have also reached the conclusion that Governor Wolf's order regulated the "use" of property within the meaning of identical "Ordinance or Law" exclusions. *See, e.g.*, *Newchops*, 2020 WL 7395153, at *7; *but see Frank Van's*, 2021 WL 289547, at *9 (holding that the phrase "construction, use, or repair" suggests that the exclusion relates to the physical structural integrity of the property).

exclusion therefore precludes Plaintiff's from seeking recovery of their business losses under the Policy.

### c. Plaintiff's Reasonable Expectations

Plaintiff argues that the absence of a virus or bacteria exclusion, coupled with the Policy's Food-Borne Illness provision, establishes that Plaintiff had a reasonable expectation of coverage for business losses resulting from the Governor's shut down orders. Pl. Resp. at 15-17. As a result, Plaintiff reasons that even if they have not stated the requisite theory of recovery under the terms of the Policy, their reasonable expectation of coverage entitle them to relief. *See id.* The court's priority when interpreting insurance contracts is to effectuate the reasonable expectations of the insured. *United Financial Cas. Co. v. Princeton Excess and Surplus Lines Ins. Co.*, 748 Fed. App'x 435, 439 (3d Cir. 2018). This requires the court to "examine the totality of the insurance transaction involved." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005). When the policy language is unambiguous, courts should give effect to its explicit terms. *Frederick Mut. Ins. Co. v. Hall*, F. App'x 115, 117 (3d Cir. 2018). Nevertheless, a party's reasonable expectations can overcome this unambiguous language when the insured relies upon representations of the insurer that do not accurately reflect the terms of the policy. *UPMC Health Sys. v. Metro Life Ins. Co.*, 391 F.3d 497, 502-03 (3d Cir. 2004).

Plaintiff has not pled facts showing that they reasonably expected that income losses resulting from their inability to use the premises as a dine-in restaurant would qualify as a "Covered Cause of Loss" under the Policy. Absent from the pleadings are any allegations that Defendant unilaterally changed the terms of the Policy after the Parties entered into their agreement. *UPMC Health Sys.*, 391 F.3d at 502. Instead, Plaintiff merely points to the language of the Policy itself as evidence of their reasonable expectation for coverage. Specifically, Plaintiff contends that because the Policy did not contain a virus, bacteria, or microorganism exclusion, they reasonably expected

that losses arising from these hazards qualified as a "Covered Cause of Loss." *See* Pl. Resp. 15-16. Plaintiff also argues that the provision providing for a limited coverage extension for food-borne illnesses further justified their expectations. *Id.* at 16.

The Court is unpersuaded by Plaintiff's contention that the text of the Policy itself gave rise to reasonable expectations of coverage contrary to its plain terms. As an initial matter, the absence of a "virus, bacteria, or microorganism exclusion" provides no support for this conclusion. Courts in this district have consistently dismissed "loss of use" claims as failing to properly allege a "loss of property" under the terms of the policy without reference to whether the policy contained a virus exclusion. *See, e.g.*, *J.B.'s Variety Inc. v. Axis Ins. Co.*, 2021 WL 1174917, at *4-5; *Frank Van's*, 2021 WL 289547, at *7; *Newchops*, 2020 WL 7395153, at *4-6; *Kessler Dental Assocs.*, 2020 WL 7181057, at *4. The fact that certain claims were not specifically excluded has no bearing on the fact that Plaintiff's claims do not fall within the scope of a "Covered Cause of Loss."[7] *See 4431, Inc.*, 2020 WL 7075318, at *13 n.18.

Plaintiff's argument concerning the "Food-Borne Illness" extension is equally unavailing. This provision provides coverage for losses sustained from civil orders suspending operations "*resulting from*…[e]xposure of the described premises to a contagious or infectious disease." *See* Answer, Ex. 1 at 232 (emphasis added). The phrase "resulting from" suggests a requirement of proximate causation. *See Cher-D, Inc. v. Great Am. Alliance Ins. Co.*, No. 05-5936, 2009 WL 943540, at *7 (E.D. Pa. Apr. 7, 2009). Plaintiff does not assert that the Governor's shut down orders resulted from exposure of any of their properties to the COVID-19 virus. Indeed, the Governor's orders would have issued regardless of whether Plaintiff's restaurants experienced any such outbreak. The "Food-Borne Illness" extension therefore describes a situation different than the

---

[7] The same principle applies to Plaintiff's assertion that the absence of a clause disclaiming coverage "even if the properties have not been damaged" within the Business Income and Civil Authority provisions gave rise to a reasonable expectation of coverage. *See* Pl. Resp. 17.

13

case at hand and shows that Plaintiff's expectations of coverage in this instance would be unreasonable.

Courts have, in certain instances, granted leave to amend complaints alleging a reasonable expectation of coverage. *See, e.g.*, *Frank Van's*, 2021 WL 289547, at *10. In these cases, plaintiffs who had not clearly articulated the reasons supporting their expectation were granted leave to offer more specific allegations. *Id.* This is not there case here. Plaintiffs have argued that their reasonable expectation for coverage was rooted in the terms of the Policy itself and the Court has rejected this contention for the reasons set forth above. Courts should permit curative amendment when justice so requires. Fed. R. Civ. P. 15(a)(2). However, dismissal with prejudice is appropriate where amendment would be futile. *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007). Since Plaintiff cannot amend the terms of the Policy, amendment of the Complaint would also be in vain.

## V. CONCLUSION

Isaac's cannot recover their business losses under the Business Income or Civil Authority provisions of its Policy with State Auto. In order to state a claim for recovery, the insured must allege a suspension of operations "caused by direct physical loss of or damage to property." A "direct physical loss of property" requires tangible, physical alterations to the structure itself. Plaintiff's inability to use their properties as dine-in restaurants do not satisfy this requirement because their property remained otherwise functional and sustained no structural harm. Plaintiff has therefore failed to state a claim for a "direct physical loss of property" under the applicable provisions of their Policy with State Auto. Plaintiff is also barred from recovery under the "Ordinance or Law" exclusion, which precludes recovery for losses resulting from a government order regulating the use of the insured's property.

Accordingly, Defendant's Motion for Judgment on the Pleadings is granted. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge